IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>RICKY PATTEN,<br><br>   Defendant. | No. CR10-0110<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  A.    Statements By T.A.. . . . . . . . . . . . . . . . . . . . . . . . . 2
  B.    Application for a Search Warrant. . . . . . . . . . . . . . . . . 3
  C.    Execution of the Search Warrant. . . . . . . . . . . . . . . . . 5
  D.    Defendant's Attempt to Flee. . . . . . . . . . . . . . . . . . . 5
  E.    Further Questioning and Searches. . . . . . . . . . . . . . . . 6

V.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  A.    Search of Defendant's Residence. . . . . . . . . . . . . . . . . 7
   1.    Was the Search Warrant Supported by Probable Cause?. . . . . . 7
   2.    Would the Leon Good Faith Exception Apply?. . . . . . . . . . 12
  B.    Defendant's Arrest. . . . . . . . . . . . . . . . . . . . . . . . 14

VI.  SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

On the 3rd day of December, 2010, this matter came on for hearing on the Motion to Suppress (docket number 9) filed by the Defendant on November 21, 2010. The Government was represented by Assistant United States Attorney Mark A. Tremmel. Defendant Ricky Patten appeared personally and was represented by his attorney, Dennis Evan McKelvie.

## II. PROCEDURAL HISTORY

On October 18, 2010, Defendant Ricky Patten was charged in a six-count Indictment with sexual exploitation of children (Count 1) and possession of child pornography (Counts 2-6). At his arraignment on October 25, 2010, Defendant entered a plea of not guilty. Trial was scheduled for December 20, 2010.

On November 21, 2010, Defendant timely filed the instant motion to suppress. Due to the pendency of the instant motion, the trial has been rescheduled for February 7, 2011.

## III. ISSUES PRESENTED

In his motion to suppress, Defendant raises two issues: first, Defendant argues that the search warrant issued on July 12, 2010 is not supported by probable cause. Second, Defendant argues that his warrantless arrest on that date was violative of the Fourth Amendment. The Government denies Defendant's claims and argues, alternatively, that the July 12 search of Defendant's house would nonetheless fall within the good faith exception found in *Leon*.

## IV. RELEVANT FACTS

### A. Statements By T.A.

On July 12, 2010, Officer Terry Oltman of the Grundy Center, Iowa, Police Department met with T.A., Defendant Ricky Patten's 15-year-old stepdaughter. T.A. came to the Grundy County Sheriff's Office shortly after 1:00 p.m. on that date and reported that she had been sexually abused by Defendant. At that time, Defendant lived with his wife, Heather, and three children (including T.A.) in a house on D Avenue in Grundy Center.

2

T.A. told Officer Oltman that approximately two years earlier, Defendant began taking pictures of her, which Defendant said he would be forwarding to a modeling agency. Initially, T.A. was fully clothed in the pictures, but it progressed to T.A. wearing lingerie, and then to Defendant taking photographs of T.A. fully nude. In response to questioning by Oltman, T.A. reported that the photographs were taken with a black digital camera. T.A. advised Oltman that the disks containing the photographs were stored by Defendant above the furnace in the basement. To T.A.'s knowledge, Defendant had not saved any of the images on a computer.

T.A. also told Officer Oltman that approximately eight to nine months earlier, Defendant started engaging T.A. in sex acts. According to T.A., Defendant started "to touch her in places that he should not have," and progressed to vaginal sex, anal sex, and oral sex. On July 11, 2010 – the day before T.A. met with Oltman – Defendant wanted to videorecord a sex act with T.A. She refused, and Defendant became "very upset." Oltman testified that Defendant sent T.A. a text message which stated that "if she wanted him to stay at the residence, she would have to have vaginal sex with him 15 times a week and anal sex five times a week." T.A. then reported the events to a young friend and her mother, and they convinced T.A. to report it to law enforcement.

### B. Application for a Search Warrant

After meeting with T.A., Officer Oltman then went to the office of Grundy County Deputy Sheriff Ron Tordoff. Also present at that time was the Assistant Grundy County Attorney, Greg Greiner. Based on information provided by Oltman, Tordoff typed the search warrant application.[1] The "facts and circumstances" supporting the request for a search warrant were described in the application as follows:

---

[1] It was common for police officers to prepare warrant applications on software owned by the Sheriff's Department. Deputy Tordoff neglected to change that part of the software which automatically inserted his name in the application and, therefore, it was necessary for Officer Oltman to cross out Tordoff's name and insert his name after the application had been printed.

3

> On July 12th 2010 I began an investigation into a report of sexual abuse involving a 15 year old female by her step father, Ricky Patten. It was reported that Ricky Patten has been sexually abusing the victim for approx. 4 years prior to this date. It has also been reported that Ricky Patten has been photographing the victim in the nude and saving the images for future viewing. It was reported the photographs were taken with a black in color digital camera that Ricky Patten has in his possession at the Patten residence located where the family lives at [xxx] D Avenue in Grundy Center, Iowa. The images stored on the camera memory and/or in any form of digital media will be important pieces of evidence that could suibstantiate [sic] what has been reported by the victim. A search warrant is being requested to search the residence and curtilage along with Ricky Patten for evidence connected to this investigation. During the course of my career in law enforcement with the Grundy Cemter [sic] Police Department, I have knowledge that Ricky & Heather Patten have lived at [xxx] D Avenue for the past 2 to 3 years.

See Application for Search Warrant (docket number 15-2) at Part II.[2] Also included in the application as Part III was a section entitled "Informant Attachment." However, the section was not completed by Oltman.

Officer Oltman and Deputy Tordoff then presented the application to District Associate Judge Jeffrey L. Harris. Oltman and Tordoff testified that Judge Harris immediately placed Oltman under oath. Judge Harris then asked for clarification regarding certain aspects of the application. For example, Judge Harris asked if the allegations of sexual abuse were four years old, or if it was "ongoing." Oltman told the judge that the abuse was ongoing. In response to questioning by Judge Harris, Oltman also reported that T.A. had come forward at that time because she had been encouraged to do so by a friend. Oltman told the judge that T.A. was back at the sheriff's office, preparing a written report. At that time, it was believed that Defendant was at a doctor's appointment in Iowa City. Oltman advised Judge Harris that they hoped to execute the search warrant prior to

---

[2] The actual street address was included in the application, but has been redacted for purposes of this Report and Recommendation.

4

Defendant's return to the residence. Judge Harris found probable cause to issue a search warrant based upon his review of the application and his interview of the applicant.

### C. *Execution of the Search Warrant*

At approximately 3:00 p.m. on July 12, Officer Oltman proceeded to Defendant's residence, together with Chief Brock Gilbert and Officer Dustin Blackburn of the Grundy Center Police Department. Defendant, his wife Heather, and one child were present at the residence when officers arrived. Oltman testified that he first read a *Miranda* warning to Defendant and Heather Patten. In response to questioning, Defendant advised officers where the black digital camera could be found. When asked if there were additional memory cards, Defendant pointed to a cupboard drawer on the west kitchen wall, but no memory cards were found there.

Officer Oltman then told Defendant that they "knew what we were looking for," and suggested that Defendant cooperate. Defendant asked to speak privately in the living room. Oltman and Defendant then proceeded to the living room, where Oltman advised Defendant that he knew there were other memory cards hidden above the furnace. Defendant admitted that the memory cards were there, "and started talking about having sexual intercourse with T.A. and also how he wanted to stop; he knew it was wrong, but he was unable to stop." At that point, Oltman arrested Defendant on the charge of sexual abuse.

A search of Defendant's residence revealed five memory cards in a silver foil box found in a cold air return just west of the furnace. An open box of condoms was also found in the cold air return. Officer Oltman opened the first memory card and viewed the first few images, but stopped after finding a "topless" image of T.A.

### D. *Defendant's Attempt to Flee*

At some point, Defendant "bolted" from the house. According to Officer Oltman, Defendant "attempted to impale himself on a metal rod in front of the residence." Following a struggle with officers, Defendant was taken back into custody. Defendant "had flipped the cuffs in front of him and he was then recuffed behind his back."

5

Deputy Tordoff did not initially accompany the Grundy Center police officers in executing the search warrant. In monitoring the radio traffic, however, Tordoff heard Chief Gilbert call for an ambulance and request additional manpower at the residence. Upon responding to the scene, Tordoff found Defendant sitting on the front steps of the house, handcuffed behind his back. Tordoff approached Defendant and "asked him if he was okay." Defendant said he was doing fine, other than having a reaction to being maced. According to Tordoff, Defendant "said he actually felt worse for what he had been doing to his stepdaughter." Defendant told Tordoff that he had been having sex with T.A., and Tordoff then "cautioned" Defendant that any statements made to Tordoff could be used against Defendant at a later time.

When the ambulance arrived, Deputy Tordoff walked Defendant to the ambulance and accompanied him to the hospital. While at the hospital, Defendant asked Tordoff if he was going to be one of the investigating officers because "he wanted to talk to me about having sex with his stepdaughter." At that time, Tordoff advised Defendant that the police department would be handling the investigation and he would need to make any statements to them.

### E. Further Questioning and Searches

While the record is somewhat imprecise, Defendant was apparently taken to the Grundy County Law Enforcement Center later that day, after being released from the hospital. Officer Oltman testified that he again read Defendant his *Miranda* rights and then interviewed him. Defendant admitted taking nude photographs of T.A. and also admitted having sexual intercourse with T.A.

Two days later, on July 14, 2010, a second search warrant was issued by Judge Harris for another search of Defendant's residence and for forensic examination of the items seized. The testimony regarding the second state court search warrant was limited, and copies of the application and warrant were not introduced into the record.

On September 14, 2010, a third search warrant was obtained from the undersigned magistrate judge. The federal search warrant was obtained to conduct a forensic search

6

of the storage cards and computer seized from Defendant's residence on July 12 and July 14, 2010.

## V. DISCUSSION

First, Defendant asserts that the search warrant executed on July 12, 2010 was not supported by probable cause. The Government disputes Defendant's claim and, alternatively, argues that the search falls within the good faith exception found in *Leon*. Second, Defendant argues that his warrantless arrest violated the Fourth Amendment.

### A. Search of Defendant's Residence

#### 1. Was the Search Warrant Supported by Probable Cause?

Initially, Defendant argues that the July 12, 2010 search warrant issued by Judge Harris was not supported by probable cause. In support of his argument, Defendant asserts that the application fails to provide information regarding the reliability of a "confidential informant." In response, the Government argues that T.A. was not a "confidential informant" and that the totality of the circumstances supported a finding by Judge Harris that evidence of a crime could probably be found in Defendant's residence.

In his application for the search warrant, Officer Oltman stated that he was investigating a "report" of the sexual abuse of a 15-year-old female by her stepfather, Ricky Patten. The application provides some detail regarding the nature of the allegations, but does not specifically identify the source of the "report." However, the application asserts that images stored on a camera or on other digital media will be important evidence that could substantiate "what has been reported by the victim." Accordingly, the written application infers that the 15-year-old stepdaughter was the source of the "report." This inference was reinforced by answers Oltman gave to Judge Harris under questioning. Specifically, Oltman told the judge that T.A. had come forward at that time because she had been encouraged to do so by a friend, and that T.A. was back at the sheriff's office, preparing a written report. In Part IV of the Application, Judge Harris stated that in addition to the written application, he was relying, in part, on a sworn statement provided to him by the applicant (Oltman) during a "personal interview."

7

When an issuing judge relies solely on the written application to issue a search warrant, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), in turn quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *see also United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) ("Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon 'only that information which is found within the four corners of the affidavit.'" (quotations omitted)); *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982) ("[A]t the time the warrant was applied for, the issuing magistrate relied solely on the affidavit which was presented to him, and that no evidence was adduced before the magistrate. In these circumstances, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.").

The Fourth Amendment, however, allows a judge issuing a search warrant "to consider sworn oral testimony supplementing a duly executed affidavit to determine whether there is probable cause upon which to issue a search warrant." *Frazier v. Roberts*, 441 F.2d 1224, 1226 (8th Cir. 1971) (citation omitted); *United States v. Berkus*, 428 F.2d 1148, 1150 (8th Cir. 1970) (The "substantive practicalities" of the Fourth Amendment allow a judge issuing a search warrant "to supplement the affidavit by sworn testimony of the officer."). While best practice would call for the judge to include an abstract of the testimony in his or her endorsement to the application, such a writing is not required. *Campbell v. Minnesota*, 487 F.2d 1, 4-5 (8th Cir. 1973) (providing that while it is preferable to make a recording of oral testimony used to supplement an affidavit, such a procedure is not required by the Fourth Amendment).[3]

---

[3] FEDERAL RULE OF CRIMINAL PROCEDURE 41(d)(2)(C) provides that "[t]estimony taken in support of a warrant must be recorded by a court reporter or by a suitable
(continued...)

8

Accordingly, in determining whether probable cause was established for the issuance of the search warrant on July 12, 2010, Judge Harris could properly consider sworn testimony provided by Officer Oltman. While it may have been preferable to record the conversation, or prepare an abstract of the testimony, there is no Fourth Amendment requirement that Judge Harris do so. Oltman testified consistently with Deputy Tordoff regarding the information provided to Judge Harris, and the Court finds their testimony in this regard to be credible.

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable

---

[3](...continued)
recording device." The Rule is inapplicable, however, when the warrant "was issued by a state court judge and was sought and executed entirely by state, not federal, law enforcement officers." *United States v. Cote*, 569 F.3d 391, 393 8th Cir. 2009). Furthermore, Iowa Code section 808.3, which requires an abstract of witness testimony that serves as a basis for granting a warrant application, is inapplicable in a federal prosecution. *Id.*

and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

In asserting that probable cause is lacking, Defendant argues that Judge Harris had no information upon which to judge the credibility of the "confidential informant." The Government responds that the source of the information was known to Judge Harris, and the Court may properly consider the fact that the information was provided by "a private citizen and a victim," rather than by "a professional informant."

In addressing the requirement formerly found in *Aguilar* and *Spinelli* – that an application for a search warrant must attest to the credibility of an informant and the reliability of the information – the Eighth Circuit has recognized a distinction between "an informant from the criminal milieu" and a "victim-eyewitness." "We have discovered no case that extends this requirement [found in *Aguilar* and *Spinelli*] to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met." *United States v. Button*, 653 F.2d 319, 326 (8th Cir. 1981) (quoting with approval *United States v. Bell*, 457 F.2d 1231, 1238 (5th Cir. 1972)). While the two-prong test of *Aguilar-Spinelli* has been replaced by a "totality of the circumstances" analysis, *Gates*, 462 U.S. at 238, the distinction remains the same. The cases in this regard were recently collected by the district court of Minnesota:

> "The lower courts have rather consistently held that the proof-of-veracity rules which obtain in informant cases are not applicable with respect to other sources of information." 2 LaFave, *supra*, § 3.4(a), at p. 220. "'[A] citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves.'" *Edwards v. Cabrera*, 58 F.3d 290, 294 (7th Cir.1995)

(internal citation omitted). Thus, where an affiant recites information obtained from "a private citizen and a victim," the usual degree of corroboration is not required. *United States v. Lewis*, 738 F.2d 916, 922 (8th Cir.1984) (rejecting challenge to source's credibility and reliability). *Accord United States v. Ross*, 713 F.2d 389, 393 (8th Cir.1983) ("We here deal with a citizen informant with no motive to falsify, rather than a professional informant, with attendant credibility concerns."); *see also United States v. Patane*, 304 F.3d 1013, 1016-17 (10th Cir.2002) (relying on "the presumption of veracity accorded other victim-witnesses"), rev'd on other grounds, 542 U.S. 630 (2004) (effect of failure to give *Miranda* warnings); *United States v. Sparks*, 265 F.3d 825, 830 (9th Cir.2001) ("This was not an unreliable criminal informant, but a complaining victim who had no apparent reason to lie."); *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir.2001) (stating that "[a]n ordinary citizen's eyewitness account . . . is normally sufficient to supply probable cause" without further corroboration).

*United States v. Nguyen*, 2006 WL 3486993 (D. Minn.) at *7.

Here, Judge Harris knew the source of the "report" described by Officer Oltman in his search warrant application. It was Defendant's 15-year-old stepdaughter, the alleged victim. In applying a totality of the circumstances analysis, Judge Harris made a practical, common-sense decision that there was a fair probability that evidence of a crime could be found in Defendant's residence. *Gates*, 462 U.S. at 238. I believe that Judge Harris had a substantial basis for reaching that conclusion. *Id.* at 238-39 ("the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed") (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)). While the search warrant application in this case may fairly be described as "bare bones," it nonetheless meets the probable cause requirement of the Fourth Amendment.[4]

---

[4] It should be noted that the Eighth Circuit Court of Appeals has found probable cause based solely on the uncorroborated statements of a confidential informant or a cooperating individual. *See United States v. Pruett*, 501 F.3d 976, 982 (8th Cir. 2007); *United States v. Hallam*, 407 F.3d 942, 946 (8th Cir. 2005).

11

Accordingly, I respectfully recommend that the district court reject Defendant's argument that the search warrant of July 12, 2010 lacked probable cause.

### 2. *Would the Leon Good Faith Exception Apply?*

The Government also argues that the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984), is applicable in this case. For the reasons set forth above, I believe that it is unnecessary for the district court to address the good faith exception, since there existed probable cause for the search warrant. Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The good faith exception provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances are present.

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-633 (citing *Leon*, 468 U.S. at 923).

Defendant did not file a written reply to the Government's argument that the good faith exception in *Leon* applies to the execution of the July 12 search warrant at Defendant's house. At the time of hearing, however, Defendant's counsel advised the Court that the Defendant was relying on the fourth circumstance enumerated above. That is, counsel argued that the search warrant was "so facially deficient" that the executing officers could not reasonably presume that the warrant was valid. However, Defendant

fails to identify any "facial deficiencies" in the warrant. Rather, it would appear that Defendant is actually asserting the third *Leon* exception, and contending that the search warrant application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

When assessing the good faith of a police officer who executed a warrant, courts look to the totality of the circumstances, "'including any information known to the officers but not presented to the issuing judge.'" *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007) (quoting *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)). Here, Officer Oltman had been told by Defendant's 15-year-old stepdaughter that Defendant had been taking nude photographs of her and, for the past eight or nine months, had engaged the child in sex acts. T.A. provided Oltman with specifics regarding the circumstances surrounding the photographs, the nature of the photographs, the sex acts performed, the camera used to take the photographs, and where the disks containing the photographs could be located in the house. Armed with this information, Oltman consulted with Deputy Tordoff and Assistant County Attorney Greiner. With their assistance, an application for search warrant was prepared and submitted to a district associate judge. After reviewing the application and asking Oltman additional questions, Judge Harris found probable cause and issued a search warrant.

I believe that Officer Oltman relied in good faith on the judge's determination that there was probable cause to issue a warrant. Furthermore, I believe that his good faith reliance on the validity of the search warrant was objectively reasonable.[5] Accordingly, even *if* the district court finds that probable cause was lacking for the issuance of the search warrant on July 12, 2010, the search executed on that date nonetheless falls within the good faith exception found in *Leon*.[6]

---

[5] "Ordinarily, a police officer cannot be expected to question a judge's probable cause determination." *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991).

[6] The issues of probable cause and the good faith exception may be addressed by
(continued...)

13

## B. Defendant's Arrest

Next, Defendant asserts that "his arrest was made in his home without probable cause and without an arrest warrant," and that "[s]uch an arrest is an illegal violation of the defendant's Fourth Amendment rights against unreasonable search and seizure."[7] Defendant's argument in this regard fails on both factual and legal grounds.

Defendant argues that "[b]ecause the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, it is a basic principle that searches and seizures inside a home without a warrant are presumptively unreasonable," citing *Payton v. New York*, 445 U.S. 573 (1980).[8] The issue addressed in *Payton*, however, was whether the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576. There, officers went to Payton's apartment, intending to arrest him, but did not obtain a warrant. Although music could be heard inside the apartment, there was no response to their knock on the door. Eventually, the officers used crowbars to break open the door and enter the apartment. *Id.* at 576. In the instant action, the Grundy Center police officers entered Defendant's residence with a search warrant validly

---

[6](...continued)
the district court in either order. That is, if the district court finds that probable cause existed for the issuance of the search warrant, then it need not address the *Leon* issue. On the other hand, if the district court concludes that the *Leon* good faith exception is applicable, then it need not address the issue of whether the search warrant is supported by probable cause. *See, e.g., United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis."); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006).

[7] *See* Defendant's Motion to Suppress (docket number 9) at 2.

[8] *See* Defendant's Brief in Support of Motion to Suppress (docket number 9-1) at 8.

14

issued by a judge. That is, the officers were lawfully in Defendant's residence at the time of the arrest. Simply put, *Payton* has no application here.[9]

Defendant claims that he was arrested without probable cause, asserting that "[a]t the time of his arrest, the police had only the uncorroborated accusations of T.A. made earlier that same day."[10] That is not true. In addition to the allegations made by T.A., Officer Oltman had Defendant's admissions, made after being given a *Miranda* warning. That is, Defendant was not arrested until after he admitted engaging in sex acts with his 15-year-old stepdaughter. T.A.'s allegations, coupled with Defendant's admissions, provided Oltman with ample probable cause to arrest Defendant on the charge of sexual abuse.

In short, neither the officers' entry into Defendant's home, nor Defendant's warrantless arrest, were violative of the Fourth Amendment. I respectfully recommend that the district court reject Defendant's argument that evidence flowing from his arrest must be suppressed.

## *VI. SUMMARY*

I believe that the search warrant application would lead a prudent person to believe that there was a "fair probability that contraband or evidence of a crime" could be found at Defendant's residence. *Grant*, 490 F.3d at 631. In considering the totality of the circumstances, Judge Harris properly found probable cause to support the issuance of a search warrant on July 12, 2010. *Gates*, 462 U.S. at 238. Even *if* probable cause was otherwise lacking, however, the officers acted in good faith on the judge's determination

---

[9] Similarly, the other cases cited by Defendant in his brief are unavailing. *See, e.g.*, *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("Here, the police had neither an arrest warrant for petitioner, nor a search warrant for petitioner's apartment, when they entered his home, arrested him, and searched him."); *Bashir v. Rockdale County*, 445 F.3d 1323, 1328 (11th Cir. 2006) ("It is undisputed Deputy Davis and the unnamed deputies did not have a warrant prior to entering Bashir's home and effecting his arrest.").

[10] *See* Defendant's Brief in Support of Motion to Suppress (docket number 9-1) at 8.

that there was probable cause to issue the warrant, and that reliance was objectively reasonable. *Leon*, 468 U.S. at 922. Finally, Defendant's claim that his arrest violated the Fourth Amendment is without merit. Therefore, Defendant's motion to suppress should be denied.

## VII. RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that Defendant's Motion to Suppress (docket number 9), be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on December 3, 2010.*

DATED this 9th day of December, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA